# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CADENCE EDUCATION, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-cv-2092-JWB ) |
| J. BRANDON VORE, SARAH VORE, and FHD HOLDINGS, INC., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Submission Regarding Attorney Fees for Motion for Sanctions (ECF No. 193). Defendants filed this motion pursuant to the Court's order on October 2, 2018.[1] Plaintiff opposes Defendants' request for attorney's fees, and has also requested an evidentiary hearing on this issue (ECF No. 202). For the reasons discussed below, the Court grants in part and denies in part Defendants' motion, and denies Plaintiff's request for an evidentiary hearing.

### I. Relevant Background

On July 21, 2018, Defendants filed a motion for sanctions.[2] The motion was based on Plaintiff's alleged failure to adequately investigate the CS-DB02 server ("DB02") while discovery was ongoing, and its failure to timely disclose the existence of a second hard drive within DB02. Defendant's motion was fully briefed[3] and the Court held a non-evidentiary hearing on the motion on September 26, 2018.

---

[1] *See* ECF No. 191.

[2] ECF No. 161.

[3] See ECF Nos. 161, 167, and 178.

At that hearing, the Court made oral rulings, memorialized in a written order.[4] The Court found that Plaintiff had violated Fed. R. Civ. P. 26(a)(1)(A)(ii), which provides that a party must, without awaiting a discovery request, provide to the other parties a copy "of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . ." The Court also found Plaintiff had violated Fed. R. Civ. P. 26(e), which states a party who has made a disclosure pursuant to Fed. R. Civ. P. 26(a) must supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." These violations stemmed from Plaintiff's failure to adequately investigate and inspect DB02 while discovery was ongoing, and subsequently its failure to timely inform defense counsel of the second hard drive after the second hard drive was discovered. The Court emphasized that it had conducted a pretrial conference with the parties in between when the second hard drive was discovered and when Plaintiff informed defense counsel of the discovery. Yet at no time during the pretrial conference or prior to entry of the pretrial order did Plaintiff's counsel inform defense counsel or the Court about the second hard drive. Instead, Plaintiff's counsel waited a full week after the discovery of the second hard drive to inform defense counsel.

During a recess in the September 26th hearing, after the Court made its findings of the above violations, the parties agreed on several sanctions, which the Court adopted in full. The Court denied Defendants' request for default judgment. The Court took Defendants' request for

---

[4] ECF No. 191.

monetary sanctions under advisement and ordered Defendants to submit their billing statements for their reasonable time in briefing the motion for sanctions and in appearing at the hearing.

## II. Analysis

### A. Whether Monetary Sanctions are Appropriate

Plaintiff first argues the Court should deny Defendants' request for attorney's fees because they have "failed to provide the necessary support for an award of fees for their underlying Motion for Sanctions" by only submitting their billing statements rather than any legal or factual support.[5] However, as Defendants point out in their reply,[6] the Court's order specifically stated Defendants were to "submit their billing statements for their 'reasonable' time in briefing their motion for sanctions and in appearing at the hearing on the motion."[7] This is precisely what Defendants have done. Their legal and factual support for sanctions, including monetary sanctions was extensively briefed in their original motion for sanctions, to which Plaintiff responded and on which the Court held the September 26, 2018 hearing. The Court considers here only whether, in addition to the sanctions already ordered, Plaintiff should also be ordered to pay monetary sanctions. Defendants were not required to provide further legal briefing, only their submitted billing statements. As explained fully in the following paragraphs, the Court will find that monetary sanctions are appropriate based specifically upon Plaintiff's failure to timely disclose – at a critical juncture in the case – its discovery of the second hard drive.

---

[5] ECF No. 202 at 1.
[6] ECF No. 209 at 1, ¶1.
[7] ECF No. 191 at 5.

Defendants ask the Court to award monetary sanctions under Fed. R. Civ. P. 37(c) and 37(d)(1)(A).[8] Despite Defendant's focus on subsection 37(d), the Court finds subsection 37(c) to be the more appropriate basis for sanctions here.[9] That rule states in relevant part that if a party fails to comply with Fed. R. Civ. P. 26(a) or (e), the Court, on motion and after giving an opportunity to be heard, may order payment of the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or harmless.[10]

First, the Court must decide whether Plaintiff's failure to timely disclose the second hard drive was substantially justified or harmless. "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."[11] The determination of whether a violation is justified or harmless is entrusted to the broad discretion of the district court.[12] Based on the briefing and argument from counsel, the Court finds Plaintiff's failure was not substantially justified or harmless. The Court has previously ruled that while Plaintiff and its counsel exercised poor judgment, it does not find that they acted willfully or in bad faith.[13] However, Plaintiff has provided no reasonable justification for its failure to timely disclose the second hard drive.[14] Plaintiff's counsel admitted that locating

---

[8] ECF No. 161 at 19.

[9] Defendants do cite Fed. R. Civ. P. 37(c) throughout their motion but do not provide any analysis on how the rule applies to this case in their Request for Sanctions section. They focus instead on Fed. R. Civ. P. 37(d). *See* ECF No. 161 at 19–20.

[10] Fed. R. Civ. P. 37(c)(1)(A).

[11] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal citation omitted).

[12] *Id.*

[13] ECF No. 191 at 4. *See also Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227–28 (10th Cir. 2015) (noting Fed. R. Civ. P. 37(c)(1) does not require a showing of bad faith, and thus "courts have not read such a requirement into the rule.").

[14] *See Estate of McDermed v. Ford Motor Co.*, No. 14-cv-2430-CM-TJJ, 2016 WL 1298096, at *3 (D. Kan. Apr. 1, 2016) ("The party who failed to make the required disclosure has the burden to demonstrate substantial justification or the lack of harm.") (internal citations omitted).

the second hard drive was a "significant" discovery,[15] but Plaintiff claims it delayed disclosing the information because it was waiting to confirm the contents of the hard drive first.[16] But this misses the point. Counsel owe a duty of candor to the Court and opposing counsel.[17] Wanting to confirm the contents of the hard drive does not explain or justify Plaintiff's failure to disclose the *existence* of the hard drive.

Once Plaintiff knew of the existence of the second hard drive, it knew that its corporate representative, Director of Information Technology Ed Shoro, had given materially incomplete or inaccurate testimony[18] and Plaintiff had a duty to correct the record. Plaintiff claims it acted promptly in disclosing the information. But the Court disagrees in the context here. Indeed, Plaintiff's counsel was aware of the second hard drive but made a conscious decision not to disclose it at a critical juncture in the case – the pretrial conference. Although in court with opposing counsel and the Court for more than two hours, at no point during the pretrial conference or at any time prior to entry of the pretrial order did Plaintiff disclose this material information.

This lack of candor to opposing counsel and the Court had very significant consequences. As previously discussed, this error "deprived the Court and counsel of an opportunity prior to the entry of the pretrial order to address the potential need for additional discovery and any other potential issues arising out of the tardy disclosure of the second hard drive."[19] Since the

---

[15] *See* ECF No. 192 at 51, 53.

[16] ECF No. 202 at 5.

[17] KRPC 3.3. *See also* D. Kan. Rule 83.6.1.

[18] During the September 26th hearing, Plaintiff conceded that Mr. Shoro's testimony was "not complete" and, though Mr. Shoro was testifying truthfully based upon his knowledge at the time, his testimony was in fact "inaccurate." *See* ECF No. 192 at 30, 46.

[19] ECF No. 191 at 3.

disclosure of the second hard drive, the Court indeed has had to extend discovery to allow Defendants the opportunity to inspect the hard drive and prepare a separate expert report. Plaintiff has also been allowed to supplement its expert report.[20] The parties have had to expend further time and expense to depose Mr. Shoro for a second time.[21] And of course, the parties have expended time and expense on briefing and appearing for hearing on this issue. Thus, Plaintiff's failure to timely disclose the second hard drive was not harmless and was not substantially justified. Pursuant to Fed. R. Civ. P. 37(c)(1)(A), the Court finds monetary sanctions in the form of attorney's fees are appropriate.

### B. Amount of Monetary Sanctions to be Awarded

Defendants submitted affidavits from their counsel identifying their time recorded for briefing the motion for sanctions and in appearing at the September 26, 2018 hearing. Defendants request $22,730.50. Plaintiff argues the Court should not award attorney's fees because its actions were reasonable, but the Court has already found otherwise.

Plaintiff also argues Defendants failed to reasonably meet and confer before filing their motion for sanctions. The Court heard argument on this issue at the September 26, 2018 hearing. Despite the unqualified language in the federal and local rules, courts may consider motions on their merits "even when the duty to confer has been unfulfilled in certain circumstances."[22] Here, Defendant's counsel claims he attempted to reach Plaintiff's counsel by phone. Plaintiff's

---

[20] ECF No. 213.

[21] Mr. Shoro was deposed as a Rule 30(b)(6) witness on behalf of Plaintiff on April 10, 2018. Mr. Shoro testified that there was only one hard drive in the DB02 server, and that he had "wiped it" himself. *See* ECF No. 161-3. At the September 26, 2018 hearing, the parties agreed that Plaintiff would pay the reasonable costs and fees for a second deposition of Mr. Shoro to discuss both DB02 hard drives. *See* ECF No. 191 at 5.

[22] *Grider, et al. v. Shawnee Mission Med. Ctr., Inc., et al.*, No. 16-cv-2750-DDC, 2018 WL 3862703, at *1 (D. Kan. Aug. 14, 2018) (quoting *Miller v. NEP Group, Inc.*, No. 15-cv-9701-JAR, 2016 WL 6392505, at *3 (D. Kan. Oct. 28, 2016).

counsel disagrees. The Court does not know what really happened and is not willing to get into a swearing match between counsel. But, given the serious consequences of Plaintiff's failure to timely disclose the second hard drive in this case, the Court, in its discretion, finds addressing the motion on its merits is appropriate and necessary.

Having found Plaintiff's actions were not reasonable and monetary sanctions are appropriate, the Court must determine whether Defendants' requested amount of attorney's fees is reasonable. "In determining reasonable attorney fees, the starting point for determining the amount of a reasonable fee is the 'lodestar' figure, which is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"[23] The Court may adjust the lodestar as necessary.[24] The Court must refer "to the prevailing market rates in the relevant community" when examining the hourly rate.[25] Plaintiff does not argue that defense counsel's hourly rates exceed the prevailing market rates charged by lawyers of comparable skill and experience in this type of litigation. Ms. Angotti's listed hourly rate is $215. Mr. Spies' listed hourly rate is $400. This Court has previously found a $400 hourly rate, and even a $600 hourly rate, reasonable.[26] Based on the Court's own knowledge and other cases in this district approving similar rates,[27] and because Plaintiff does not argue the submitted hourly rates are unreasonable,

---

[23] *Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-cv-1094-JTM-TJJ, 2018 WL 1992413, at *2 (D. Kan. Apr. 27, 2018) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

[24] *Id.*

[25] *Id.* at *3.

[26] *See Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017).

[27] *See, e.g.*, *King v. Fleming*, No. 16-2108-JAR-GLR, 2017 WL 1135579, at *2 (D. Kan. Mar. 27, 2017) (approving $200 hourly rate for Kansas City attorney as "exceedingly reasonable" in light of attorney's experience, the complexity of the case, and hourly rates typically approved); *Schoonover v. Colvin*, No. 12-1469-JAR, 2016 WL 7242512, at *2 (D. Kan. Dec. 15, 2016) (approving reduced hourly rate of $400 for Wichita attorney); *Rogers v. Bank of Am., N.A.*, No. 13-1333-CM, 2014 WL 6632944, at *2 (D. Kan. Nov. 21, 2014) (finding $300 partner and $225 associate hourly rates were in line with prevailing Wichita market rates).

the Court finds defense counsel have made a sufficient showing that their hourly rates are reasonable.

Next, the Court considers whether the claimed number of hours expended was reasonable. First, Plaintiff argues Defendants have not shown an entitlement to fees because defense counsel's affidavits do not show that counsel billed Defendants for the proposed attorney's fees. But Plaintiff does not provide any support for this requirement, and the Court is unaware of any. Plaintiff cites *Rogers v. Bank of Am.*, which says "[a]n attorney may not bill to opposing counsel for fees it would not be able to bill to its client."[28] But Plaintiff does not explain how Defendants' failure to show that they received a bill for the time incurred in the submissions means defense counsel are "not able to bill" their clients. There is no indication that Defendants have not or cannot receive a bill for defense counsel's time in drafting the motion for sanctions and appearing at the hearing.

Plaintiff also implies one of Defendants' attorneys was not properly licensed during the time the fees were incurred. In their reply, Defendants state only that "none of the fees identified in Defendants' submission as being incurred briefing Defendants' motion for sanctions or in appearing at the September 26, 2018 hearing on the motion were incurred during any period of administrative suspension, as insinuated" by Plaintiff.[29] However, Defendants provide no evidence or documentation to support this statement. The Court contacted the Kansas Attorney Registration Office and was informed that the referenced administrative suspension was from October 3, 2018 to October 15, 2018, and therefore not during the time billed for preparing the motion for sanctions or subsequent hearing.

---

[28] No. 13-1333-CM-TJJ, 2014 WL 6632944, at *2 (D. Kan. Nov. 21, 2014).
[29] ECF No. 209 at 3, ¶6.

Finally, Plaintiff argues Defendants' submission of billing statements is excessive and improper because of the use of "block billing" and "vague, sloppy, and imprecise time entries."[30] Plaintiff contends Ms. Angotti's submission contains impermissible block billing, defined as "the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks."[31] The Tenth Circuit has defined block billing as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."[32] Although the Tenth Circuit discourages block billing, it "has not adopted a *per se* rule prohibiting fees due to block billing."[33] However, "where block billing makes it difficult, if not impossible, for the Court to determine the amount of time spent on specific tasks, a general reduction in attorney fees may be warranted."[34]

Ms. Angotti's submission does include block billing. She lists a total (not broken down by individual day) of 20.3 hours billed from July 6, 2018 to July 11, 2018, which does not itemize the time expended on each specific task during those 20.3 hours billed. Similarly, she lists a total (not broken down by individual day) of 31.9 hours billed from July 12, 2018 to July 21, 2018, again without any itemization of time expended on specific tasks. Although it is clear from the detailed descriptions of the work performed and from her able appearances in court that Ms. Angotti did do considerable work on the matters at issue, the lack of itemization or

---

[30] ECF No. 202 at 7–11.

[31] *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *9 (D. Kan. Aug. 18, 2015) (citing *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214–15 (10th Cir. 1998)).

[32] *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996).

[33] *Okla. Nat. Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1263–64 (N.D. Okla. 2004) (citing *Cadena*, 224 F.3d at 1215).

[34] *Id.*

breakdown of time expended on specific tasks makes it difficult for the Court to determine the reasonableness of the time expended or whether any billed time is excessive or duplicative. For purposes of awarding a monetary sanction the Court will exercise its discretion to apply a reduction to the block-billed entries. Ms. Angotti's total fee submission is $16,490.50. The Court will apply a reduction of $4,000, resulting in a total allowed fee of $12,490.50 for Ms. Angotti's billed time.

As to Plaintiff's argument that Mr. Spies' submission is vague, sloppy, and imprecise, the Court disagrees. Plaintiff cites *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*[35] as support for its contention that Mr. Spies' time entries "are too vague to support an award of attorney's fees."[36] But in the example Plaintiff cites, the district court denied attorney's fees to a consultant, not an attorney handling the case. The Tenth Circuit upheld the district court's decision finding that "[i]f an attorney is consulting on a case, the assistance provided must be actually necessary or essential to proper representation rather than merely comforting or helpful," and the consultant's billing entries were not specific enough to justify attorney's fees.[37] Here, Mr. Spies is an attorney actively participating in this case, and the Court finds his submission to be specific enough to justify awarding his attorney's fees. The Court also notes that, to the extent Mr. Spies' time entries reflect time consulting or working with Adam Gasper on the case, the Court need not be concerned with duplicitous time because Defendants are not seeking payment for Mr. Gasper's time.

The Court also finds unpersuasive Plaintiff's arguments that defense counsel's submissions contain excessive hours and background research. Plaintiff's complaints focus on

---

[35] 157 F.3d 1243 (10th Cir. 1998).
[36] ECF No. 202 at 10.
[37] *Case*, 157 F.3d at 1252.

Ms. Angotti's submission. But the lengthy narrative descriptions of time expended on the case by Ms. Angotti clearly reflect significant productive work in the case. Additionally, as previously discussed, the Court is reducing Ms. Angotti's fee award by $4,000 and finds that reduction is sufficient after considering all of Plaintiff's arguments.

### C. Plaintiff's Request for an Evidentiary Hearing

In its response, Plaintiff requests an evidentiary hearing. The Court left open the possibility of an evidentiary hearing in its order following the September 26, 2018 hearing. However, based on the briefing, previous hearing of September 26th, and extensive review of the record, the Court does not find that an evidentiary hearing is necessary or would be beneficial. Plaintiff requests the evidentiary hearing, in part, "to further address the reasonableness of its efforts."[38] But the Court has already found that, though there was no bad faith, Plaintiff's failures were inexcusable.

The Court's decision to award monetary sanctions is based specifically on Plaintiff's Rule 26(e) failure to supplement its disclosures after discovering the second hard drive in DB02. Plaintiff argued at length during the September 26th hearing and in subsequent briefing that it acted promptly and should not be sanctioned for failure to disclose the second hard drive during the pretrial conference or before entry of the pretrial order. The Court has considered Plaintiff's arguments and found them to lack merit. Moreover, testimony Plaintiff has indicated an interest in presenting regarding its then-counsel's discussion with Defendants' counsel in September 2017[39] would have no bearing on the Court's decision to award monetary sanctions for failure to

---

[38] ECF No. 202 at 11.

[39] Plaintiff indicates it would like to present its then-lead counsel Russ Keller's testimony because "it is hotly disputed that Defendants raised the issue of missing hard drives at the time they contend they did." (ECF No. 202 at 4). Whether Defendants raised the issue of missing hard drives in September 2017 is not relevant to the Court's decision here, because the Court's decision is based on Plaintiff's failure to disclose the second hard drive after its discovery in June 2018.

timely disclose the second hard drive. The Court concludes that an evidentiary hearing would not be helpful or useful to the Court.

To the extent Plaintiff argues an evidentiary hearing is required before entry of an award of attorney's fees, the requirement of an opportunity to be heard prior to the imposition of sanctions requires only the opportunity to respond in writing.[40] Here, Plaintiff was put on notice that Defendants intended to seek monetary sanctions. It had an opportunity to respond in writing, twice,[41] and to make oral argument to the Court. Plaintiff's request for an evidentiary hearing is therefore denied.

### D. Mediation

After the September 26, 2018 hearing, the Court raised with the parties the possibility of ordering further mediation. The Court has given additional consideration to whether mediation might be beneficial to the parties and finds that further mediation at this late stage in the litigation and a brief period prior to trial is warranted, justified, and could be beneficial. The parties are ordered to complete mediation on or before March 1, 2019. The parties are ordered to confer in good faith and to notify the Court via email to chambers, by January 31, 2019, of the mediator they have selected and the agreed time and place of mediation.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Submission Regarding Attorney Fees for Motion for Sanctions (ECF No. 193) is granted in part and denied in part as set forth above. The Court awards Defendants $18,730.50 in attorney's fees and orders

---

[40] *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995) ("An opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements.").

[41] ECF Nos. 167 and 202.

Plaintiff to deliver payment of this amount to Defendants' counsel within ten (10) days from the date of this order.

**IT IS FURTHER ORDERED** that Plaintiff's request for an evidentiary hearing (ECF No. 202) is denied.

**IT IS SO ORDERED.**

Dated January 16, 2019, at Kansas City, Kansas.

*Teresa J. James*
Teresa J. James
U. S. Magistrate Judge